GAIL TANNS, Plaintiff, v. BEN A. BORENSTEIN AND COMPANY, Defendant (Ben A. Borenstein and Company, Third-Party Plaintiff-Appellant; Arcadia Products, Inc., Third-Party Defendant-Appellee).

First District (3rd Division)  No. 1—95—4086

Opinion filed July 23, 1997.—Modified on denial of rehearing December 30, 1997.

Frank Kasbohm, of Fraterrigo, Best & Beranek, of Chicago, for appellant.

Howard T. Goffen, of Jesmer & Harris, of Chicago, for appellee.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

Ben A. Borenstein & Co. (BABCO), a general contractor, filed suit against a subcontractor, Arcadia Products (Arcadia), for breach of contract arising out of Arcadia's insurance carrier's refusal to defend

BABCO in an underlying negligence action. The underlying suit was brought by Gail Tanns, who was allegedly injured as a result of tripping over construction debris on a sidewalk adjacent to the project that is the subject of the subcontract between BABCO and Arcadia. BABCO and Arcadia filed motions for summary judgment with respect to the breach of contract claim. The trial court granted Arcadia's motion and denied BABCO's motion for summary judgment. On appeal, BABCO contends that: (1) the agreement to purchase insurance was enforceable; and (2) Arcadia breached the agreement to purchase insurance.

BACKGROUND

On March 2, 1989, Arcadia and BABCO entered into a subcontract agreement (Agreement) for the construction of a high-rise apartment building at 1250 North Dearborn Street. The Agreement contained a provision requiring that Arcadia indemnify BABCO for claims arising out of BABCO's negligence. The same provision required Arcadia to procure and maintain insurance at its own expense and to name BABCO as an additional insured. BABCO reserved the right to determine whether the terms of the policy were satisfactory.

The insurance policy was to provide coverage for worker's compensation, comprehensive automobile liability insurance and comprehensive general liability insurance, including contractual liability insurance. Arcadia procured the required insurance at its own expense, naming BABCO as an additional insured, and BABCO did not indicate that the terms of the policy were unsatisfactory.

On April 6, 1990, plaintiff, Gail Tanns, was walking on Dearborn Street in the area where BABCO was constructing the apartment building and allegedly sustained injuries when she fell on the pedestrian passageway. Tanns filed a complaint against BABCO, alleging that BABCO's negligence was the proximate cause of her injuries. BABCO filed a third-party complaint against 18 subcontractors employed at the construction site, alleging various claims and seeking contribution. Seventeen of the eighteen subcontractors settled with BABCO. Arcadia did not reach a settlement agreement.

After being sued by Tanns, BABCO tendered its defense to Arcadia's insurance carrier. This tender was denied. BABCO filed a complaint against Arcadia for breach of contract for failing to procure insurance that covered BABCO for its own negligence. Both parties moved for summary judgment. The trial court denied BABCO's motion for summary judgment on the breach of contract issue, but granted Arcadia's motion for summary judgment on the breach of contract issue. BABCO appeals.

We affirm.

## ANALYSIS

### I

■ BABCO contends that the agreement to purchase insurance was enforceable. Arcadia argues that the agreement to purchase insurance was void and, therefore, unenforceable. At issue in this case is section 1 of "An Act in relation to indemnity in certain contracts" (the Act) (Ill. Rev. Stat. 1989, ch. 29, par. 61). At the time of Tanns' injury, the Act provided:

> "With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building [or] structure, *** every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable." Ill. Rev. Stat. 1989, ch. 29, par. 61.

The Act also stated in section 3 that it did "not apply to construction bonds or insurance contracts or agreements." Ill. Rev. Stat. 1989, ch. 29, par. 63.

Our supreme court has stated that section 3 (now 740 ILCS 35/3 (West 1992)) serves to protect the construction worker and the general public from suffering construction-related injuries by encouraging accident-prevention measures. *Capua v. W.E. O'Neil Construction Co.*, 67 Ill. 2d 255, 260, 367 N.E.2d 669 (1977). The statute voids, as against public policy, indemnification provisions in construction contracts relieving a person from liability for his own negligence. *Bosio v. Branigar Organization, Inc.*, 154 Ill. App. 3d 611, 613, 504 N.E.2d 996 (1987). We note that insurance and indemnification are two distinct notions. A promise to obtain and pay for insurance is conceptually different from a promise to personally indemnify, thus assuming the responsibility for any damage or injury. *Lehman v. IBP, Inc.*, 265 Ill. App. 3d 117, 121, 639 N.E.2d 152 (1994).

In the instant case, paragraph 11 of the subcontract agreement between BABCO and Arcadia states:

> "11. The Subcontractor hereby assumes entire responsibility and liability for any and all damage or injury of any kind or nature whatsoever *** to all persons, whether employees of the Subcontractor or otherwise, and to all property, caused by, resulting from, arising out of or occurring in connection with the execution of the Work, and if any claims for such damage or injury *** be made or asserted, whether or not such claims are based upon BABCO's alleged active or passive negligence[,] *** the Subcontractor agrees to indemnify and save harmless BABCO *** against

any and all such claims *** and the Subcontractor agrees to and does hereby assume, on behalf of BABCO, *** the defense of any action at law or in equity which may be brought against BABCO ***."

We believe that the above provision unequivocally provides for indemnity of BABCO's own negligence and, therefore, violates the Act. Thus, Arcadia had no duty to indemnify BABCO for its own negligence under the Agreement. *GTE North, Inc. v. Henkels & McCoy, Inc.*, 245 Ill. App. 3d 322, 612 N.E.2d 1375 (1993).

■ However, appellate courts have consistently held that, although a party may not insure its obligations under a void indemnity agreement, provisions that require the indemnitor to provide liability insurance for the indemnitee, making the indemnitee an insured under the policy, are valid. See *Jokich v. Union Oil Co.*, 214 Ill. App. 3d 906, 574 N.E.2d 214 (1991); *St. John v. City of Naperville*, 155 Ill. App. 3d 919, 508 N.E.2d 1128 (1987); *Bosio v. Branigar Organization, Inc.*, 154 Ill. App. 3d 611, 506 N.E.2d 996; *Zettel v. Paschen Contractors, Inc.*, 100 Ill. App. 3d 614, 427 N.E.2d 189 (1981); *Jandrisits v. Village of River Grove*, 283 Ill. App. 3d 152, 160, 669 N.E.2d 1166 (1996); *Transcontinental Insurance Co. v. National Union Fire Insurance Co.*, 278 Ill. App. 3d 357, 367, 662 N.E.2d 500 (1996).

■ The duty to defend is much broader than the duty to indemnify. *Western Casualty & Surety Co. v. Adams County*, 179 Ill. App. 3d 752, 756, 534 N.E.2d 1066 (1989). In determining whether an insurer has a duty to defend its insured, the court must look to the allegations of the underlying complaint and compare these allegations to the relevant coverage provisions of the insurance policy. *Bonnie Owen Realty, Inc. v. Cincinnati Insurance Co.*, 283 Ill. App. 3d 812, 816, 670 N.E.2d 1182 (1996). If the underlying complaint alleges facts within or potentially within the policy's coverage provisions, the insurer has a duty to defend even if the allegations are groundless, false or fraudulent. *Monticello Insurance Co. v. Wil-Freds Construction, Inc.*, 277 Ill. App. 3d 697, 701-02, 661 N.E.2d 441 (1996). Any doubts about coverage are to be resolved in the insured's favor. *Bonnie Owen Realty*, 283 Ill. App. 3d at 816.

In the instant case, the subcontract between BABCO and Arcadia stated that Arcadia would obtain insurance to cover:

"Comprehensive general liability insurance including contractual liability insurance, broad form property damage, completed operations, independent contractors, personal injury (employee exclusion deleted), and XCU exclusions deleted, with BABCO, owner and architect to be named as additional insured thereunder, with the following minimum limits ***."

BABCO argues that the insurance clause is valid because it is not inextricably tied to the void indemnity provision and the insurance clause is within the statutory exemption for insurance contracts from the otherwise void indemnity agreement. BABCO relies on several cases to support its argument. BABCO first relies on *Juretic v. USX Corp.*, 232 Ill. App. 3d 131, 596 N.E.2d 810 (1992). In *Juretic*, the court found a valid agreement to obtain insurance in language that required the contractor to obtain insurance coverage "insuring *** Contractor's and Owner's liability to pay for any bodily injuries" and "for any and all loss, damage and injury to the property of any and all persons in any manner caused by *** Contractor's performance of the work." *Juretic*, 232 Ill. App. 3d at 133. The court reasoned that this language covered "matters other than the obligations under the void indemnity provision" because it required the owner to be named as an additional insured on the insurance obtained. *Juretic*, 232 Ill. App. 3d at 135.

BABCO also relies on *Lehman v. IBP, Inc.*, 265 Ill. App. 3d 117, 639 N.E.2d 132 (1994). In *Lehman*, the court held that the insurance and indemnity provisions in that case did not violate the Act because the provisions did not require indemnification for the owner's own negligent or intentional acts. Instead, the provisions protected the owner from the contractor's conduct, and, therefore, the provisions did not "touch on the public policy concerns underlying the Act." *Lehman*, 265 Ill. App. 3d at 121. The court concluded that the insurance requirement fell within the insurance exception to the Act and was not inextricably tied to an illegal indemnity clause. *Lehman*, 265 Ill. App. 3d at 123.

Arcadia asserts that the insurance agreement is void and unenforceable because it is inextricably tied to a void indemnity agreement. Arcadia relies on *Shaheed v. Chicago Transit Authority*, 137 Ill. App. 3d 352, 484 N.E.2d 542 (1985), to support its assertion. In *Shaheed*, a subcontractor had agreed to indemnify a contractor from its own negligence. The subcontractor had also agreed to maintain insurance "insuring all the Subcontractor[']s indemnity obligations under [the] agreement." *Shaheed*, 137 Ill. App. 3d at 363. The court held that this agreement was unenforceable because it was an agreement to obtain insurance against a void agreement to indemnify. *Shaheed*, 137 Ill. App. 3d at 365.

Arcadia also relies on *GTE North*, 245 Ill. App. 3d 322, 612 N.E.2d 1375. In *GTE North*, the court held that the indemnity provision was void under the Act because it indemnified the contractor for its own negligence. The court also held that the contractor's agreement to insure its obligations to provide indemnification was also void because

this agreement was inextricably tied to the void indemnity provision. The court based its holding that the contract did not contain an agreement to obtain insurance for the owner on the fact that, in cases in which courts have found such agreements, the contracts have expressly required that the promisee be named an insured on the policy or be directly covered by the policy. *GTE North*, 245 Ill. App. 3d at 326, citing *Jokich v. Union Oil Co.*, 214 Ill. App. 3d 906, 574 N.E.2d 214 (1991); *St. John v. City of Naperville*, 155 Ill. App. 3d 919, 508 N.E.2d 1128; *Bosio v. Branigar Organization, Inc.*, 154 Ill. App. 3d 611, 506 N.E.2d 996; *Zettel v. Paschen Contractors, Inc.*, 100 Ill. App. 3d 614, 427 N.E.2d 189 (1981). In *GTE North*, there was no such express requirement in the language of the contract. Likewise, in *Transcontinental Insurance Co. v. National Union Fire Insurance Co.*, 278 Ill. App. 3d 357, 662 N.E.2d 500, the court held that the parties did not have an agreement to obtain insurance other than the void agreement by the subcontractor to insure its obligations under the indemnity provision. Relying on *GTE North*, the *Transcontinental* court also held that the insurance provision was void because there was no express requirement in the contract that the contractor be named as an insured under the subcontractor's insurance policy or that the insurance the subcontractor furnished cover the contractor's, as opposed to only the subcontractor's, liability. *Transcontinental*, 278 Ill. App. 3d at 365.

■ We agree with BABCO that the subcontract agreement contained a valid agreement to obtain insurance. Here, unlike in *GTE North* and *Transcontinental*, there was express language in the contract that required Arcadia to provide insurance for BABCO. Also, unlike in *Shaheed*, the insurance provision in the instant case is not inextricably tied to the void indemnity clause because it covers matters other than the obligations under the void indemnity provision. Therefore, the insurance provision is enforceable under the subcontract agreement.

## II

■ BABCO also contends that Arcadia breached the agreement to purchase insurance when Arcadia obtained insurance that named BABCO as an additional insured but excluded coverage for occurrences arising from BABCO's negligence.

The insurance policy at issue provides, in relevant part:

"1. Who is an insured (Section II) is amended to include as an insured the person or organization (called 'additional insured') shown in the Schedule but only with respect to liability arising out of:

A. 'Your work' for the additional insured(s) at the location designated above, or;

B. Acts or omissions of the additional insured(s) in connection with their general supervision of 'your work' at the location shown in the schedules.

With respect to the insurance afforded these additional insureds, the following additional provisions apply:

B. Additional Exclusions. This insurance does not apply to:

\* \* \*

(3) 'Bodily injury' of [sic] 'property damage' arising out of any act or omission of the additional insured(s) or any of their employees, other than the general supervision of wok [sic] performed for the additional insured(s) by you."

Arcadia argues that it did not breach the agreement to purchase insurance as a result of the insurance policy provisions. We agree.

BABCO contends that, under the facts of this case and in the context of Illinois case law, the parties contemplated that Arcadia's insurance would defend BABCO against Gail Tanns's complaint naming BABCO as sole defendant. BABCO argues that the parties so contemplated pursuant to *Briseno v. Chicago Union Station Co.*, 197 Ill. App. 3d 902 (1990), *Monical v. State Farm Insurance Co.*, 211 Ill. App. 3d 215 (1991), and *Vaughn v. Commonwealth Edison Co.*, 259 Ill. App. 3d 304 (1994). Specifically, BABCO argues that it was the intent of the parties that Arcadia's general liability carrier would participate in the defense of BABCO such as presented in the underlying litigation.

However, BABCO's contention is not supported by the record in this case. The record in this case establishes that the parties did intend that Arcadia would obtain insurance that named BABCO as an additional insured. Further, the record establishes that BABCO was named as an additional insured on the comprehensive insurance coverage obtained by Arcadia. However, under the policy, Arcadia was not required to defend BABCO where BABCO was solely negligent. In our view, the record establishes that the parties never agreed that Arcadia would have a duty to have BABCO insured for injuries caused solely by BABCO's negligence.

We note BABCO's reliance on *Briseno*, *Monical* and *Vaughn* to support its contention. However, we have examined these cases and find the facts of each of the cases to be inapposite. Although not an issue in *Briseno*, we note in *Briseno* that a pertinent "Rider 'C' Insurance Liability Addendum" excluded liability caused solely by the negligence of the indemnities by providing in part:

"7(d) The Contractor agrees to indemnify and save harmless the Indemnitees against loss and expense by reason of claims or of the liability imposed by law upon the Indemnitees for damages

because of bodily injuries \*\*\* *unless such injury is caused solely by the negligence of the Indemnities.*" (Emphasis added.) *Briseno*, 197 Ill. App. 3d at 905.

The facts in *Briseno* are unrelated to the facts in the instant case. In *Briseno*, National Wrecking Company (NWC), pursuant to contract, purchased comprehensive insurance with Bituminous Insurance Company that named Chicago Union Station Company (Chicago Union) as an additional insured. Joseph Briseno was a NWC employee who was killed while working at the old Union Station. His estate sued Chicago Union and others. Chicago Union and Briseno entered into a settlement agreement in the amount of $875,000 which was covered by the Bituminous insurance policy. Chicago Union, through Bituminous, filed a third-party action against NWC seeking to shift part of the loss from Bituminous to NWC. The trial court granted summary judgment in favor of NWC and the judgment of the trial court was affirmed on appeal. *Briseno*, 197 Ill. App. 3d at 907.

BABCO also relies on *Vaughn*, 259 Ill. App. 3d 304. However, the facts in *Vaughn* are also distinguishable. In *Vaughn*, the contract between the parties provided in separate paragraphs that the third-party defendant (Hunter) would indemnify the third-party plaintiff (Edison) and that Hunter would obtain insurance for Edison. The court stated that, even though the indemnity clause itself was void, its inclusion in the contract was evidence of the parties' intent, and, therefore, the court could not say that the parties intended to look solely to the insurance provided by Hunter and accept the decision of the insurer to cover the claim or not as binding upon both parties. However, the court held that there was a genuine issue of material fact regarding whether the insurance provided by Hunter would cover the claim against Edison because it was not clear from the record that the insurance company had agreed to pay any amount that might be owed to the plaintiff in the underlying action. *Vaughn*, 259 Ill. App. 3d at 306.

Unlike *Vaughn*, here, the insurance provision excluded coverage of claims against BABCO when BABCO was solely negligent. Moreover, in our view, the exclusionary provisions in the instant case are clear, definite, and explicit. *Bonnie Owen Realty*, 283 Ill. App. 3d at 817.

Finally, we disagree with BABCO's contention that Arcadia breached the agreement where the additional insurance obtained excluded coverage arising solely from BABCO's negligence. Rather, we hold in the instant case that the insurance purchased by Arcadia and the certificate of insurance furnished to BABCO were in compliance with the contract between the parties.

We also note that the record in this case establishes that Arcadia stated in its motion for summary judgment that the insurance Arcadia procured naming BABCO as an additional insured was presented to BABCO and BABCO did not indicate that the terms of the policy were unsatisfactory. In response to Arcadia's motion, BABCO agreed with the statement of facts set forth in Arcadia's motion.

For the reasons cited herein, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

GORDON and LEAVITT, JJ., concur.